AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| United States of America | ) |
|---|---|
| v. | ) |
| | ) Case No. 3:22-mj-71520 MAG |
| Olvin Isaac Gutierrez-Nunez, Carlos Cruz-Medina, and Joshua Melendez, | ) |
| *Defendant(s)* | ) |

**FILED**
Nov 29 2022
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of October 13, 2022 in the county of San Francisco in the Northern District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and ((b)(1)(B)(vi) | Possession with Intent to Distribute 40 Grams or More of a Substance Containing Containing Fentanyl |
| 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii) | Possession with Intent to Distribute 50 Grams or More of a Substance Containing Methamphetamine |

This criminal complaint is based on these facts:

Please see the attached affidavit of DEA TFO Alexis Gomez

☑ Continued on the attached sheet.

Approved as to form /s/ Hillary T. Irvin
AUSA Hillary T. Irvin

/s/ Alexis Gomez
*Complainant's signature*

DEA TFO Alexis Gomez
*Printed name and title*

Sworn to before me by telephone.

Date: 11/28/2022

*Judge's signature*

City and state: San Francisco, California         Hon. Alex G. Tse, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Alexis Gomez, a Task Force Officer of the Drug Enforcement Administration ("DEA"), being duly sworn, hereby declare as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a criminal complaint and arrest warrants charging Olvin Isaac Gutierrez-NUNEZ, Carlos Cruz-MEDINA, and Joshua MELENDEZ (collectively, the "TARGET SUBJECTS") with crimes related to drug trafficking activity. Specifically, there is probable cause to believe that the TARGET SUBJECTS committed at least the following offenses in the Northern District of California:

Count 1: On or about October 13, 2022, Olvin Isaac Gutierrez-NUNEZ possessed with intent to distribute 40 grams and more of fentanyl, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(B)(vi).

Count 2: On or about October 13, 2022, Carlos Cruz-MEDINA possessed with intent to distribute 40 grams and more of fentanyl, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(B)(vi).

Count 3: On or about October 13, 2022, Carlos Cruz-MEDINA possessed with intent to distribute 50 grams and more of a mixture and substance containing methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(B)(viii).

Count 4: On or about October 13, 2022, Joshua MELENDEZ possessed with intent to distribute 40 grams and more of fentanyl, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(B)(vi).

Count 5: On or about October 13, 2022, Joshua MELENDEZ possessed with intent to distribute 50 grams and more of a mixture and substance containing methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(B)(viii).

2. This affidavit is submitted for the limited purpose of demonstrating probable cause for the issuance of the requested complaint and arrest warrants. I have not included every fact

known to me concerning this investigation.  Instead, I have set forth only the facts necessary to support the criminal complaint and lawful arrests of the TARGET SUBJECTS.

3. I have based my statements in this affidavit on my training and experience, personal knowledge of the facts and circumstances obtained through my participation in this investigation, information provided by other agents and law enforcement officers, and information provided by records and databases. I believe these sources to be reliable.  Where I refer to conversations and events, I refer to them in substance and in relevant part rather than in their entirety or verbatim, unless otherwise noted.  Unless otherwise noted, wherever in the affidavit I assert that a statement was made, the information was provided by another law enforcement officer, or witness who may had either direct or hearsay knowledge of that statement and to whom I or others have spoken, or whose reports I have read and reviewed.  This affidavit also reflects my current understanding of facts relating to this investigation; however, my understanding may change in the future as the investigation proceeds.

## AFFIANT BACKGROUND

4. I am employed by the San Francisco Police Department as a Police Officer and have been so employed since October 2015.  I am currently assigned to the San Francisco Police Department's Narcotics Division, and I am assigned to investigate narcotic trafficking offenses.  I am currently assigned as a Task Force Officer (TFO) to the Drug Enforcement Administration (DEA) within the San Francisco Divisional Office in California.  I have been assigned as a DEA TFO since May 2022.

5. I graduated from the San Francisco Police Department academy in June 2016.  In the police academy, I received numerous hours of narcotics related training.  I also attended the San Francisco Police Department Detective School where I received additional narcotics investigations training.  The training curriculum covered all aspects of drug investigations, including identification of controlled substances, physical surveillance, utilization of confidential sources, interview techniques, undercover operations, and the general operation of drug trafficking organizations.  Below is a list of courses I have successfully completed that are relevant to my job

duties including narcotics related arrests, investigations, and search warrants: NCRIC's 16-hour Search Warrants A-Z BATI's 40-hour Investigative Interview and Interrogation Techniques, HIDTA's 8-hour Gangs and Narcotics, HIDTA's 8-hour Search Warrants and Narcotic Investigations, RxSAFE MARIN's 4.5-hour Northern California Opioid Conference and Training, CNOA's 40-hour 57th Annual Training Institute, HIDTA's 8-hour Methamphetamine Investigations and Response, HIDTA's 8-hour Street Crimes, Narcotic Enforcement, and the Law, WRCTC's 8-hour Operational Red Flags for Narcotics Investigations, HIDTA's 16-hour Criminal Drug Gang Investigations, WRCTC's 9-hour Fentanyl Safety, Investigations and Decontamination, HIDTA's 8-hour Undercover Social Media Investigations, HIDTA's 16-hour Drug Identification Course, and Graves & Associates 8-hour Drug Induced Homicide Investigations.

6. During the course of my employment as a Police Officer, I have participated in many controlled substance investigations either as a case agent or in a supporting role. I have debriefed confidential sources, and witnesses who had personal knowledge regarding drug trafficking organizations. In addition, I have discussed with numerous law enforcement officers and confidential sources the methods and practices used by drug traffickers. I have also participated in many aspects of drug investigations including, but not limited to, undercover operations, telephone toll analysis, records research, physical surveillance. I have also assisted in court ordered wiretap investigations and in the execution of numerous federal and state search and arrest warrants related to illegal activities involving controlled substances that resulted in the arrest of suspects and seizure of controlled substances.

7. Through my training, education, experience, and my conversations with other agents and officers who conduct drug investigations, I have become familiar with drug traffickers' use of mobile telephones, and their use of numerical codes and code words to conduct their business. I have become familiar with drug traffickers' methods of operation, including, but not limited to, the manufacturing, distribution, storage, and transportation of controlled substances, and the methods used by drug traffickers to collect, transport, safeguard, remit, and/or launder drug

proceeds. By virtue of my training and experience, and through my conversations with other agents and officers who conduct drug investigations, I have become familiar with the methods used by drug traffickers to import, transport, safeguard, and distribute drugs, and the methods used by drug traffickers to collect, transport, safeguard, remit, and/or launder drug proceeds.

8. I have participated in the investigation discussed in this Affidavit. I have also discussed the investigation with other DEA Special Agents and with other law enforcement agencies involved in it. I have reviewed records and reports relating to the investigation. Unless otherwise noted, wherever in this Affidavit I assert that a statement was made, the information was provided by another DEA agent, law enforcement officer, or witness who may had either direct or hearsay knowledge of that statement and to whom I or others have spoken, or whose reports I have read and reviewed.

9. I am an investigator and law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7). I am empowered by law to conduct investigations, to execute search warrants, and to make arrests for offenses of Federal law, including drug trafficking.

## APPLICABLE LAW

10. Title 21 U.S.C. § 841(a)(1) provides: "Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."

11. Title 21 U.S.C. § 841(b)(1)(C) provides in relevant part: "In the case of a controlled substance in schedule I or II . . . such person shall be sentenced to a term of imprisonment of not more than 20 years . . ."

12. Title 21 U.S.C. § 841(b)(1)(A)(viii) provides in relevant part: "In the case of a violation of subsection (a) of this section involving 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers . . . such person shall be sentenced to a term of imprisonment which may not be less than 10 years or not more than life. . . ."

13.     Title 21 U.S.C. § 841(b)(1)(B)(vi) provides in relevant part: "In the case of a violation of subsection (a) of this section involving 40 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propanamide or 10 grams or more of a mixture or substance containing a detectable amount of any analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide . . . such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years . . ."

## PROBABLE CAUSE

### A.  Background on the TARGET SUBJECTS' Drug Trafficking Activity

14.     Between March and October of 2022, SFPD officers observed the TARGET SUBJECTS possessing with the intent to distribute and distributing fentanyl in the Tenderloin District of San Francisco, an area known for drug trafficking activity.

15.     **MEDINA:** On March 5, 2022, uniformed SFPD officers were patrolling near the intersection of Turk Street and Larkin Street in the Tenderloin District area of San Francisco, which is an area known for drug trafficking. Officers witnessed MEDINA walking eastbound when he noticed the uniformed officers driving a marked patrol vehicle. Upon seeing the officers, MEDINA changed directions and walked westbound. When officers turned around to follow, MEDINA ran southbound. Officers observed MEDNA kneel and throw something underneath of a parked vehicle before running east. While MEDINA ran, he threw other plastic objects on Hyde Street. Officers recovered four bagged chalky substances thrown by MEDINA under the parked vehicle and from his hands while he ran. Officers later used a TruNarc to test the items discarded by MEDINA. The TruNarc test results showed that MEDINA possessed 28.3 gross grams of fentanyl, 3.9 gross grams of cocaine HCl/salt, 4.5 grams of cocaine base, and 11.5 gross grams of fentanyl.

16.     **NUNEZ:** On April 12, 2022, an officer acting in an undercover capacity ("UC") saw NUNEZ conducting suspected hand-to-hand drug transactions in the 700 block of Eddy Street. The UC approached NUNEZ and asked to buy "one hundred" dollars' worth of "yellow." I know based on my training and experience that fentanyl dealers and users often refer to fentanyl based

5

on a color such as orange, blue, and yellow. NUNEZ produced a clear plastic bag containing a chalky substance and handed it to the UC. The UC handed NUNEZ $100 in cash. The UC asked NUNEZ for his cell phone number, and NUNEZ provided a number ending in 9461. The substance sold by NUNEZ later tested positive for fentanyl and had a net weight of 6.3 grams. On May 17, 2022, NUNEZ similarly sold a UC 6.0 net grams of fentanyl for $100.

17.    **NUNEZ:** On September 29, 2022, officers obtained a historical cell site warrant and call records for NUNEZ's cell phone ending in 9461 from a San Francisco County state judge for the period of September 29, 2022, to October 8, 2022. Those records showed that NUNEZ regularly left from an address near the 2000 block of 23rd Avenue in Oakland, California ("the Oakland Residence") in the morning before traveling to the Tenderloin District, and he returned to the Oakland Residence at the end of the day.

18.    **NUNEZ and MELENDEZ:** On October 5, 2022, officers surveilled the Oakland Residence. Officers saw NUNEZ leave the Oakland Residence and enter a black Jeep driven by MELENDEZ and also occupied by an unidentified male. MELENDEZ drove to the Tenderloin area of San Francisco. Officers witnessed NUNEZ and MELENDEZ conducted separate suspected drug transactions near 700 Eddy Street in San Francisco. On October 11, 2022, officers witnessed NUNEZ leave the Oakland Residence and drive a BMW vehicle to the Tenderloin District where he conducted additional suspected drug transactions.

**B. Officers Executed a Search Warrant at the Oakland Residence Which Revealed a Firearm and Distribution Quantities of Fentanyl, Methamphetamine, and Heroin.**

19.    On October 12, 2022, I obtained a search warrant from a San Francisco Superior Court judge for the Oakland Residence, NUNEZ, the BMW driven by NUNEZ, and the Jeep driven by MELENDEZ.

20.    The following day, October 13, 2022, officers started surveillance on the residence. Officers witnessed NUNEZ leave the Oakland Residence carrying a backpack and walking toward his vehicle. Officers detained NUNEZ and searched his backpack. Inside of his backpack, officers

found two knotted bags of suspected fentanyl, small plastic bags, and a scale. Officers searched NUNEZ's BMW vehicle with his key fob. Inside of the BMW vehicle, officers found a 9mm cartridge and a vehicle insurance card in NUNEZ's name showing that the Oakland Residence was his current address.

21. Officers proceeded to search the Oakland Residence, which is a two-bedroom apartment with a living room, one bathroom, and a fenced front patio.

22. Officers found a short-barrel rifle stuffed into a trash bag between the slats of a fence around the front patio. Investigators swabbed the rifle for DNA and submitted the swabs to the San Francisco County Forensic Lab. Those results showed that DNA on the rifle showed very strong support that the DNA belonged to NUNEZ.

23. When officers entered the residence, MELENDEZ and MEDINA were inside. MELENDEZ appeared to be waking up on the couch in the living room and MEDINA was asleep in a bedroom with his son. In addition to the TARGET SUBJECTS, there were two adult women, and two juveniles present during execution of the search warrant.

> i. *Bedroom 1 Contained Fentanyl and Methamphetamine Possessed by MEDINA and MELENDEZ.*

24. Officers entered Bedroom 1, where they found MEDINA sleeping in bed with his minor son who appeared to be approximately three years old. Bedroom 1 also contained a dresser and a closet.

25. In the closet, officers found a backpack containing MELENDEZ's Honduras photo identification, two scales, $1,704 in cash, and suspected fentanyl and methamphetamine. Officers used a TruNarc analyzer to test the substances. The suspected fentanyl tested presumptively positive for 736.6 gross grams of mannitol, which I know from my training and experience is a

common fentanyl cutting agent. The suspected methamphetamine tested presumptively positive for 95.1 gross grams of methamphetamine.

26. On top of the dresser, officers found a second backpack. Inside of that backpack, officers found cash, suspected fentanyl, methamphetamine, and heroin. Inside of the dresser, officers found bail bonds paperwork in MEDINA's name, over $10,000 in cash, and a Honduras passport in the name of M.T., who was at the Oakland Residence during execution of the search warrant and stated that she was the mother of the minor child sleeping in bed with MEDINA.

27. Officers used a TruNarc analyzer to test the substances recovered from the second backpack. The suspected fentanyl tested presumptively positive for 495 gross grams of mannitol. The suspected methamphetamine tested presumptively positive for 218.3 gross grams of methamphetamine. The TruNarc showed that the suspected heroin was 12 gross grams of an inconclusive substance.

### ii.  *Bedroom 2 Contained Fentanyl and Ammunition Possessed by NUNEZ.*

28. Inside of Bedroom 2, officers found framed photos of NUNEZ and a criminal justice program completion certificate in his name. Inside of a dresser and in the closet, officers found zip lock bags of suspected fentanyl.

29. Scattered throughout the bedroom, officers found materials for producing fentanyl including, mannitol, a hydraulic pill press machine, a press plate, powder dyes in different colors, and a respirator mask.

30. Officers also found additional evidence of drug trafficking including a fanny pack containing $7,709 in cash in multiple denominations and a handwritten pay/owe roster showing what appeared to be debts owed for drug sales. I know from my training and experience that it is common practice for drug traffickers to keep notes of drug transactions, such as pay/owe sheets like the one found in the Oakland Residence.

31.     Officers used a TruNarc analyzer to test the suspected fentanyl recovered from NUNEZ's bedroom. One bag of fentanyl recovered from the closet tested presumptively positive for fentanyl and weighed 1,957.7 gross grams.

### C. Lab Testing Revealed That the Substances Recovered from the Oakland Residence Were Heroin and Methamphetamine

32.     Investigators submitted the substances recovered from inside of the Oakland Residence to the Alameda County crime lab for testing and examination. Investigators submitted the substances based on the TARGET SUBJECTS possession of those substances. The lab randomly selected for testing a subset of the drugs seized given the high volume of drugs at issue. Six different substances across all the TARGET SUBJECTS were tested at the lab. Those tests had the following results:

| TARGET SUBJECT | LOCATION | SUBSTANCE TEST RESULT | WEIGHT |
| --- | --- | --- | --- |
| NUNEZ | In the closet in Bedroom 2 in Oakland Residence. *See infra* at paragraph 28. | Fentanyl | 372 net grams |
| MEDINA | Backpack on the dresser in Bedroom 1 in Oakland Residence. *See infra* at paragraphs at 24, 26-27. | Fentanyl | 332 net grams |
| MEDINA | Backpack on the dresser in Bedroom 1 in Oakland Residence. *See infra* at paragraphs at 24, 26-27. | Heroin | 10.36 net grams |
| MEDINA | Backpack on the dresser in Bedroom 1 in Oakland Residence. *See infra* at paragraphs at 24, 26-27. | Methamphetamine | 190 net grams |
| MELENDEZ | Backpack in closet of Bedroom 1 in Oakland Residence. *See infra* at paragraphs 23, 25. | Fentanyl | 346 net grams |

9

| MELENDEZ | Backpack in closet of Bedroom 1 in Oakland Residence. *See infra* at paragraphs 23, 25. | Methamphetamine | 89.70 net grams |

33. Based on my training and experience, and given the quantities of drugs seized, which far exceed personal use quantities, and other indicia of drug trafficking, such as the packaging, cash, the pay/owe roster, and firearm, I believe there is probable cause that the TARGET SUBJECTS possessed these drugs with the intent to distribute them. I also know that each of the TARGET SUBJECTS has been observed engaged in drug trafficking activities in the Tenderloin this calendar year.

## SEALING REQUEST

34. Based on my training and experience, the disclosure of the existence of this affidavit, the complaint, arrest warrants, and/or all related documents may cause other co-conspirators, known and unknown at this time, to destroy evidence or to conceal ongoing criminal activity, jeopardizing the progress of this ongoing investigation. I therefore request that the Court seal this affidavit, the complaint, arrest warrants, and all related documents.

## CONCLUSION

35. On the basis of my training and experience, my participation in this investigation, and the information summarized above, there is probable cause to support that the TARGET SUBJECTS committed the following offenses:

Count 1: On or about October 13, 2022, Olvin Isaac Gutierrez-NUNEZ possessed with intent to distribute 40 grams or more of fentanyl, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(B)(vi).

Count 2: On or about October 13, 2022, Carlos Cruz-MEDINA possessed with intent to distribute 40 grams or more of fentanyl, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(B)(vi).

Count 3:  On or about October 13, 2022, Carlos Cruz-MEDINA possessed with intent to distribute 50 grams and more of a mixture and substance containing methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(B)(viii).

Count 4:  On or about October 13, 2022, Joshua MELENDEZ possessed with intent to distribute 40 grams or more of fentanyl, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(B)(vi).

Count 5: On or about October 13, 2022, Joshua MELENDEZ possessed with intent to distribute 50 grams and more of a mixture and substance containing methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(B)(viii)

Dated:  November 28, 2022                              /s/ Alexis Gomez
                                                       Alexis Gomez
                                                       Task Force Officer
                                                       Drug Enforcement Administration

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this 28th day of November 2022.

_____
HONORABLE ALEX G. TSE
United States Magistrate Judge

# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: [X] COMPLAINT  [ ] INFORMATION  [ ] INDICTMENT  [ ] SUPERSEDING

**Name of District Court, and/or Judge/Magistrate Location**
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

## OFFENSE CHARGED

21 U.S.C. § 841(a)(1) & (b)(1)(B)(vi) - Prohibits any person from possessing with intent to distribute 40 grams or more of a mixture or substance containing fentanyl

21 U.S.C. § 841(a)(1) & (b)(1)(B)(viii) - Prohibits any person from possessing with intent to distribute 50 grams or more of a mixture or substance containing methamphetamine

[ ] Petty
[ ] Minor
[ ] Misdemeanor
[X] Felony

PENALTY: Min. 5 years imprisonment - max. 40 years; Fine: $5,000,000; Supervised Release: min. 4 years min, max life. $100 Special Assessment; Forfeiture; Deportation; Deny federal benefits

### DEFENDANTS - U.S

Olvin Isaac Gutierrez Nunez, Carlos Cruz-Medina, and Joshua Melendez

DISTRICT COURT NUMBER

### DEFENDANT

**IS *NOT* IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) [X] If not detained give date any prior summons was served on above charges ▶
2) [ ] Is a Fugitive
3) [ ] Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) [ ] On this charge
5) [ ] On another conviction  [ ] Federal  [ ] State
6) [ ] Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer been filed?  [ ] Yes  [ ] No   If "Yes" give date filed

**DATE OF ARREST** ▶ Month/Day/Year

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY** ▶ Month/Day/Year

## PROCEEDING

Name of Complaintant Agency, or Person (& Title, if any)
DEA TFO Alexis Gomez

[ ] person is awaiting trial in another Federal or State Court, give name of court

[ ] this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

[ ] this is a reprosecution of charges previously dismissed which were dismissed on motion of:
  [ ] U.S. ATTORNEY  [ ] DEFENSE

SHOW DOCKET NO.

[ ] this prosecution relates to a pending case involving this same defendant

[ ] prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

MAGISTRATE CASE NO.

Name and Office of Person Furnishing Information on this form: Stephanie M. Hinds
[X] U.S. Attorney  [ ] Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned): Hillary T. Irvin

[ ] This report amends AO 257 previously submitted

## ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
[ ] SUMMONS  [ ] NO PROCESS*  [X] WARRANT    Bail Amount: No bail

If Summons, complete following:
[ ] Arraignment  [ ] Initial Appearance

Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:    Before Judge:

Comments: