UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>OLVIN ISAAC GUTIERREZ-NUNEZ, MARVIN ALEXANDER RODRIGUEZ FLORES a/k/a Carlos Cruz Medina,<br><br>Defendants. | Case No. 23-cr-00030-SI-1<br><br>**ORDER ON MOTIONS IN LIMINE**<br><br>Re: Dkt. Nos. 89, 91, 95 |

Trial in this case is set for August 14, 2023. The parties have filed various motions in limine as part of their pretrial papers. Dkt. Nos. 89, 91, 95. The Court heard argument on the motions in limine during the pretrial conference and now rules as follows.

## BACKGROUND

### I. Factual Background

The factual background of this case is set forth more fully in the government's motions in limine and Mr. Rodriguez Flores's response. *See* Dkt. No. 91 (Pl.'s Mot.); Dkt. No. 98 (Rodriguez Resp.). To summarize, in April 2022 and again in May 2022, undercover officers from the San Francisco Police Department ("SFPD") purchased $100 worth of fentanyl from defendant Olvin Isaac Gutierrez Nunez, who was standing on the street in the Tenderloin neighborhood of San Francisco. Pl.'s Mot. at 1-2. Mr. Nunez provided a cell phone number for the officer to contact him if he wanted to purchase again. Based on the two sales, officers obtained a series of search warrants, and were able to use the cell phone number to ping data from T-Mobile, showing "near daily trips from Mr. Nunez's residence in Oakland to the Tenderloin, where officers saw Nunez steadily

pushing fentanyl into the community." *Id.* at 2. Officers surveilled the Oakland residence on multiple days in October 2022 and saw Mr. Nunez "leave the house and travel to the Tenderloin where he dealt drugs all day before returning back to his home in Oakland." *Id.*

In "early 2022," Officer Blake Cunningham began an investigation into defendant Marvin Alexander Rodriguez Flores, also known as Carlos Cruz Medina, after witnessing Mr. Rodriguez Flores dealing drugs in the Tenderloin.[1] *Id.* Officers obtained Mr. Rodriguez Flores's cell phone number and used it to obtain cell site location data, "which showed regular movement from an unidentified location in Oakland to the Tenderloin." *Id.* The government states that "Officer Cunningham regularly observed [Rodriguez Flores] conducting hand-to-hand drug transactions at night." *Id.*

On October 12, 2022, SFPD officers obtained a search warrant for Mr. Nunez's person, the gray BMW he drove, and his residence. *Id.* at 3. On October 13, 2022, SFPD officers executed the search warrant at the residence, after seeing Mr. Nunez leave the apartment carrying a black backpack and walking towards his BMW out front. They converged on Mr. Nunez, searched his backpack, and searched his car. From Mr. Nunez's backpack, officers found: a bag containing chunks of fentanyl, a scale, and numerous plastic bags. *Id.* In the car, they found documents in Mr. Nunez's name as well as a magazine of firearm ammunition. *Id.*

Officers proceeded to the residence, where they encountered Mr. Rodriguez Flores (asleep in one of the two bedrooms), Joshua Melendez, and three women.[2] *Id.* Officers Cunningham and Zografos searched the first bedroom (where Mr. Rodriguez Flores was found sleeping).[3] What was found in this bedroom has been the subject of confusion, both among the officers present and in court. According to the government, officers found two backpacks in Bedroom 1: a "Rugrats"

---

[1] Because Mr. Rodriguez Flores refers to himself as such in his papers, rather than as "Cruz Medina," the Court will do the same here.

[2] The defense notes that a three-year-old child was also present.

[3] In his response, Mr. Rodriguez Flores stated that Officer Zografos's body-worn camera footage had not been produced in discovery. Rodriguez Resp. at 2 n.1. The parties confirmed at the pretrial conference that the footage has since been produced.

2

backpack containing narcotics, in the closet; and another backpack containing narcotics, on the dresser behind the TV.

Initially, officers mistakenly believed the Rugrats backpack in the closet of Bedroom 1 belonged to Mr. Melendez. *See* Pl.'s Mot. at 3; Dkt. No. 99 (Falk Decl.), Ex. A (Oct. 13, 2022 Initial Incident Report) at US-00576. In the initial incident report, lead agent Officer Alexis Gomez stated, "Inside of Bedroom #1, Officer Zografos searched the closet and located a Rugrats backpack containing various narcotics, two scales, US currency, and a Honduras photo ID belonging to Joshua Melendez." Falk Decl., Ex. A at US-00576. This led to charges against Mr. Melendez in this case. On May 3, 2023, Officer Gomez filed a supplemental report, clarifying: ". . . the Honduras photo ID belonging to Joshua Melendez was not located inside of the Rugrats backpack. The photo ID issued to Melendez was located in a dresser drawer of the dresser just outside of the closet where the Rugrats backpack was placed." Falk Decl., Ex. B (May 3, 2023 Suppl. Incident Report) at 2 of 2. The government eventually dismissed the charges against Mr. Melendez.[4]

In the second backpack in Bedroom 1,[5] officers found: fentanyl, methamphetamine, and heroin packaged for distribution. Pl.'s Mot. at 3. In a dresser drawer, officers found "a Honduras passport ID belonging to Marta Torres and a bail bonds receipt from Alladin [sic] Bail Bonds with the defendant's name listed as Carlos CruzMedina." Falk Decl., Ex. A at US-00577.[6] Officers also

---

[4] A serious error in the government's brief created alarm for the defense and for the Court. With regard to the Rugrats backpack, the government stated: "On further review of the body-worn camera, it was determined that the narcotics did not originate in the backpack." Pl.'s Mot. at 3. Mr. Rodriguez Flores responded with a photo from discovery showing the Rugrats backpack full of narcotics, leading the defense (and this Court) to wonder whether someone at the scene had doctored the evidence by falsely placing the narcotics in the backpack.

At the pretrial conference, the government clarified that this sentence in its brief was an error, and that what the government intended to say was that, on further review of the body-worn camera, it was determined that *Mr. Melendez's ID* did not originate in the backpack.

[5] The government represented at the pretrial conference that there were two different backpacks in Bedroom 1: the Rugrats backpack in the closet and another backpack believed to belong to Mr. Rodriguez Flores, on the dresser behind the TV. The Court notes that this conflicts with Officer Gomez's May 3, 2023 supplemental incident report, which makes it sound as if there were just one backpack: "BWC footage shows that the rugrats backpack was not inside of the closet. The backpack was located on top of a dresser which was just outside of the closet." Falk Decl., Ex. B (May 3, 2023 Suppl. Incident Report) at 2 of 2.

[6] The defense states that the government did not retain the folder with the bail bonds receipt. Rodriguez Resp. at 3.

3

found over $14,000 in cash in Bedroom 1 as well as a lanyard with a keyfob for Mr. Rodriguez Flores's car.  Pl.'s Mot. at 3; Rodriguez Resp. at 3.  Mr. Rodriguez Flores says Bedroom 1 was rented by his girlfriend, Marta Torres.  Rodriguez Resp. at 2.

From the second bedroom (alleged to be Mr. Nunez's), Officers Scafani and Hayes[7] found: over 5 pounds of fentanyl, over $7000 in cash, ammunition, dyes to color fentanyl, fentanyl pill pressing equipment, drug dealing roster pay-owe sheets, drug cutting agents, and a respirator.  Pl.'s Mot. at 4. Officers also found "extensive ammunition hidden throughout the residence, including 9 rifle rounds, a high-capacity extended magazine loaded with 24 rounds, and 46 additional 9mm rounds of ammunition."  *Id.*  Outside the front door of the residence, in a gap between the fences between the residence and the adjacent property, Officer Puccinelli found "an AR-15 rifle-style firearm that was a privately manufactured firearm, also known as a ghost gun."  *Id.*; Falk Decl., Ex. A at US-00578, US-00584.  Officers linked the rifle found at the residence with the ammunition found in Mr. Nunez's bedroom and obtained a search warrant for Mr. Nunez's DNA.  Pl.'s Mot. at 4.  According to the government, "[t]hose DNA results showed that Nunez's DNA profile was on the rifle found at his residence.  At the scene, Officer Puccinelli secured the rifle and provided it to Officer Cunningham who transported it back to the station."  *Id.*

The government also states,

> After officers on the scene gathered the narcotics, ammunition, and cash, they placed them in separate bags attributable to each defendant for transport. The lead officer, Alexis Gomez, provided the evidence to Officer Christina Hayes. Officer Hayes transported the evidence from the residence to the San Francisco Police Department where Officer Hayes used a TruNarc analyzer to test the drugs. Officer Gomez was present during the testing of the drugs. The results of the search warrant and presumptive testing of the drugs were produced in a report authored by Officer Gomez, and additionally documented in separate supplemental reports authored by Officers Cunningham, Hayes, and Puccinelli.

*Id.*

---

[7] Officer Hayes is the subject of a motion in limine, below.

4

## II. Procedural Background

On November 29, 2022, the government filed a criminal complaint against Olvin Isaac Gutierrez-Nunez, Marvin Alexander Rodriguez Flores (a/k/a Carlos Cruz Medina), and Antony Samir Doblado Palma (a/k/a Joshua Melendez). Dkt. No. 1. On February 1, 2023, the government filed an indictment against the three defendants, charging them with various counts of possession with intent to distribute 40 grams and more of fentanyl and 50 grams and more of methamphetamine. Dkt. No. 30. The government has since dismissed the indictment against Mr. Melendez. Dkt. Nos. 72, 73.

What remains in this case, then, are the following charges:

> **Count One**: against Mr. Gutierrez-Nunez, possession with intent to distribute 40 grams and more of fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vi);
>
> **Count Two**: against Mr. Rodriguez Flores (Cruz Medina), possession with intent to distribute 40 grams and more of fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vi); and
>
> **Count Three**: against Mr. Rodriguez Flores (Cruz Medina), possession with intent to distribute 50 grams and more of a mixture and substance containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii).

*See* Dkt. No. 30.

Mr. Rodriguez Flores has invoked his rights under the Speedy Trial Act. According to counsel's calculations, the jury must be empaneled by August 17, 2023. Jury selection is currently set for August 14, 2023.

**LEGAL STANDARD**

The Ninth Circuit model jury instructions state that for the government to prove possession with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), it must prove each of the following elements beyond a reasonable doubt:

> First, the defendant knowingly possessed any controlled substance; and
>
> Second, the defendant possessed it with the intent to distribute it to another person.

> [The government is not required to prove the amount or quantity of [*specify controlled substance*]. It need only prove beyond a reasonable doubt that there was a measurable or detectable amount of [*specify controlled substance*].]
>
> It does not matter whether the defendant knew that the substance was [*specify controlled substance*]. It is sufficient that the defendant knew that it was some kind of a federally controlled substance.
>
> To "possess with intent to distribute" means to possess with intent to deliver or transfer possession of [*specify controlled substance*] to another person, with or without any financial interest in the transaction.

Ninth Cir. Model Crim. Jury Instruction No. 12.1 (June 2022).

The instructions further state:

> If you find the defendant guilty of the charge in [Count _____ of] the indictment, you are then to determine whether the government proved beyond a reasonable doubt that the amount of [*specify controlled substance*] that defendant intended to distribute equaled or exceeded [certain weights] [*insert specific threshold weight*]. Your determination of weight must not include the weight of any packaging material. Your decision as to weight must be unanimous.
>
> The government does not have to prove that the defendant knew the quantity of [*specify controlled substance*].

Ninth Cir. Model Crim. Jury Instruction No. 12.2 (June 2022).

## DISCUSSION

The government has filed seven motions in limine. Dkt. No. 91. Defendant Rodriguez Flores has filed one motion in limine, in which defendant Nunez joins. Dkt. Nos. 89, 95.

**Government's Motion No. 1 (that the drugs recovered from the residence be admitted):**

The government seeks a pre-trial ruling that the drugs recovered from the residence during the execution of the search warrant on October 13, 2022, be admitted at trial. According to the government's summary of the case, Officer Christina Hayes transported the narcotics from the residence to the SFPD, where she tested the drugs in the presence of lead agent Officer Gomez. *See* Pl.'s Mot. at 4. The government does not plan to call Officer Hayes as a witness.

The government states that Officer Hayes "is currently under internal investigation for

6

misconduct relating to her relationship with a confidential informant" in another, unrelated case. *Id.* at 7. The government argues that any contention about a possible break in the chain of custody (here, primarily around Officer Hayes's transport of the drugs from the residence to the police station) goes to the weight of the evidence, not admissibility. *Id.* at 6 (citing *United States v. Matta-Ballesteros*, 71 F.3d 754, 769 (9th Cir. 1995)). The government states that it would welcome an evidentiary hearing in advance of trial, should the Court have concerns about the admissibility of the narcotics.

Mr. Rodriguez Flores opposes the motion. Mr. Nunez joins the opposition, to the extent that Mr. Rodriguez Flores "challenges the propriety of admitting ANY evidence recovered during the Oakland search." Dkt. No. 101 (Nunez Resp.) at 4 n.1.[8] Mr. Rodriguez Flores argues, specifically: (1) that without Officer Hayes's testimony the government will not be able to present evidence authenticating each narcotics exhibit and its location, essentially arguing that the break in the chain of custody is so serious that the narcotics evidence should be excluded altogether; (2) that Officer Gomez is the only other witness who documented the results of the search warrant, and that there are serious credibility issues as to her actions in this case; and (3) that admission of the envelopes of narcotics at trial would violate Mr. Rodriguez Flores's rights under the Confrontation Clause. Rodriguez Resp. at 5-9.

**A.    Chain of Custody**

**1.    Legal Standard**

To satisfy the authentication or identification of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Federal Rule of Evidence 901(a). "If the evidence is an object connected with the commission of a crime, the proponent must also establish the chain of custody." *United States v. Harrington,* 923 F.2d 1371, 1374 (9th Cir. 1991).

---

[8] Mr. Nunez mistakenly states that he is joining "co-defendant Melendez's Opposition to the Government's Motion in Limine No. 1." *See* Nunez Resp. at 4 n.1. Because Mr. Rodriguez Flores is the only other defendant remaining in the case, the Court understands that Mr. Nunez intends to join Mr. Rodriguez Flores's opposition.

United States District Court
Northern District of California

Where a defendant challenges the admissibility of evidence (rather than the weight of evidence) based on alleged discrepancies in the chain of custody, "before such evidence can be admitted, the prosecution must introduce sufficient proof so that a reasonable juror could find that the items that the prosecution seeks to admit into evidence are in 'substantially the same condition' as when they were seized. . . . In other words, the district court may admit the evidence if there is a reasonable probability the article has not been changed in important respects." *United States v. Solorio*, 669 F.3d 943, 954 n.13 (9th Cir. 2012) (internal brackets, quotation marks, and citations omitted). "Factors to be considered in making this determination include the nature of the article, the circumstances surrounding the preservation and custody of it, and the likelihood of intermeddlers tampering with it." *Gallego v. United States*, 276 F.2d 914, 917 (9th Cir. 1960). "If there is some evidence of tampering, then the government must show that acceptable precautions were taken to maintain the evidence in its original state." *United States v. Dickerson*, 873 F.2d 1181, 1185 (9th Cir. 1988).

The Ninth Circuit has explained,

> Merely raising the possibility of tampering is not sufficient to render evidence inadmissible. *United States v. Vansant,* 423 F.2d 620, 621 (9th Cir.), *cert. denied,* 400 U.S. 835, 91 S. Ct. 72, 27 L. Ed. 2d 68 (1970). The possibility of a break in the chain of custody goes only to the weight of the evidence. *Id.; United States v. Godoy,* 528 F.2d 281, 284 (9th Cir. 1975) (per curiam). In addition, the prosecution [is] not required to call the custodian of the evidence. *See Gallego,* 276 F.2d at 917 (prosecution is not required to produce all persons who had possession of evidence).

*Harrington*, 923 F.2d at 1374. The Supreme Court has since endorsed the position that "gaps in the chain of custody normally go to the weight of the evidence rather than its admissibility." *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 n.1 (2009) (quoting *United States v. Lott*, 854 F.2d 244, 250 (7th Cir. 1988)).

### 2. Analysis

Mr. Rodriguez Flores relies on a case from the D.C. Circuit to support his position that a break in the chain of custody can be serious enough that the evidence should be excluded outright.

8

*See* Rodriguez Resp. at 6 (citing *United States v. Mejia*, 597 F.3d 1329, 1336 (D.C. Cir. 2010)). There are a few problems with Mr. Rodriguez Flores's reliance on this case. First, the portion of the decision that Mr. Rodriguez Flores cites relied on an earlier decision from the D.C. Circuit (*Novak v. District of Columbia*, 160 F.2d 588 (D.C. Cir. 1947)), and the *Mejia* court explained, "We have since retreated somewhat from *Novak*, holding that a challenge to the chain of custody goes to weight rather than admissibility." *See Mejia*, 597 F.3d at 1335. Second, the *Mejia* court ultimately ruled that the district court did not abuse its discretion in admitting a piece of evidence "despite an undisputed break in the chain of custody." *Id.* There, the district court admitted a note found in the defendant's wallet during his arrest by the police in El Salvador. The lead DEA agent arrived at the scene about ten minutes later and took custody of the defendant's belongings. The DEA agent testified at trial, but there was no evidence from any of the policeman who took part in the arrest, nor was there any evidence about what procedures the Salvadoran police used to preserve the wallet. There was no official document listing the items seized. Still, the D.C. Circuit found that admission of the evidence was not an abuse of discretion, in light of Mejia's admission that the wallet was his, testimony from the agent who found the list inside the wallet, and the brief (ten-minute) gap between the arrest and the agent's possession of the wallet. *Id.* at 1337.

In *Harrington*, the Ninth Circuit found the district court did not abuse its discretion in admitting into evidence a bag the defendant was holding when apprehended or in admitting testimony from the officer who apprehended him regarding what was in the bag, although the prosecution did not call the custodian of the evidence. *Harrington*, 923 F.2d at 1373-74. The officer testified that he was present when a criminalist from the police department placed the seized items into an evidence bag and that the bag the officer examined at trial contained all of the items seized from the defendant at the scene. *Id.* at 1374. The defendant sought to exclude the evidence because the officer was not the custodian of the bag and could not testify from memory what items were seized during the arrest. The Ninth Circuit affirmed the conviction, explaining, "Merely raising the possibility of tampering is not sufficient to render evidence inadmissible." *Id.* (citing *Vansant,* 423 F.2d at 621).

Here, the Court requires more information before it can make a ruling. Neither *Mejia* nor

9

*Harrington* involved explicit allegations or indicia of tampering; in both cases the defendants argued the evidence *could have been* tampered with because not everyone in the chain of custody testified. In this case, however, there are questions as to the credibility of Officer Hayes, who is currently under internal investigation by the SFPD. Officer Hayes bagged the drugs, transported them to the station, and labeled them.[9] To be clear, the Court has nothing before it to indicate that Officer Hayes tampered with evidence in this case. But her involvement in the handling of the evidence, coupled with the fact that officers at the scene made a major error regarding the location of Mr. Melendez's ID, warrants proceeding with caution.

As discussed at the pretrial conference, the Court will set an evidentiary hearing for **August 10, 2023, at 1:00 p.m.** in Courtroom 1. The prosecution should be prepared to introduce "sufficient proof to satisfy the Court that a reasonable juror could find that the items that the prosecution seeks to admit into evidence are in 'substantially the same condition' as when they were seized." *See Solorio*, 669 F.3d at 954 n.13 (internal brackets and citations omitted).

### B.  Confrontation Clause

Mr. Rodriguez Flores also argues that admission of the narcotics would violate his rights under the Confrontation Clause. Rodriguez Resp. at 8.

#### 1.  Legal Standard

The Confrontation Clause of the Sixth Amendment provides that in criminal cases the accused has the right to "be confronted with the witnesses against him." U.S. Const. amend. VI. The text of the Confrontation Clause applies to "those who bear testimony." *Crawford v. Washington*, 541 U.S. 36, 51 (2004). Testimony is typically "a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* Material such as "affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar

---

[9] At the pretrial conference, the government explained that Officer Gomez was present for Officer Hayes's collection and bagging of the drugs at the residence and the labeling of them at the station. The government plans to establish which drugs are which through Officer Gomez's testimony and through body camera footage.

pretrial statements that defendants would reasonable expect to be used prosecutorially" are examples of testimonial evidence subject to the Confrontation Clause. *Id.* For instance, in *Melendez-Diaz*, the Supreme Court found forensic drug testing reports were testimonial statements for purposes of the Confrontation Clause because they were essentially affidavits. Accordingly, absent a showing that the persons who prepared the drug reports "were unavailable to testify at trial *and* that [the defendant] had a prior opportunity to cross-examine them," the defendant was entitled to cross-examine them live at trial. 557 U.S. at 311.

### 2. Analysis

Here, the government has made clear that it will not call Officer Hayes at trial. Officer Hayes is the one who "itemized, organized, photographed, tested, weighed, and then booked [the] narcotics into evidence." *See* Rodriguez Resp. at 8. More specifically, Officer Hayes: "took photos of the items located and itemized them[;]" "maintained custody of all the narcotics Officer Gomez seized from this search warrant and transported them to the Narcotics office[;]" conducted a presumptive test on the suspected narcotics using a TruNarc analyzer (in Officer Gomez's presence); sealed the suspected narcotics into a narcotics bag; and booked the narcotics as evidence, labeling the different bags for the different defendants as "1 of 3," "2 of 3," and "3 of 3." Falk Decl., Ex. A at US-00581-82. Mr. Rodriguez Flores states that body camera footage shows that Officer Hayes "took custody of two unsealed plastic envelopes with undiscernible contents on the video (purportedly suspected narcotics and cash) and a cardboard box containing loose bags of what also appear to be narcotics when she left the scene of the search." Rodriguez Resp. at 6 (citing Falk Decl., Ex. A at US-00581).

Mr. Rodriguez Flores argues that admission of the plastic envelopes at trial would violate his Confrontation Clause rights. He states that Officer Gomez's "identification of these bags in connection with individual defendants solely and entirely depends on the markings and booking procedure conducted by Hayes," and that Officer Gomez "cannot be fairly cross examined on Hayes' markings." Rodriguez Resp. at 8.

*United States v. Brooks* is instructive. 772 F.3d 1161 (9th Cir. 2014). In that case, the Ninth

1    Circuit concluded that while statements made by an unavailable postal supervisor in the course of
2    an investigation were testimonial, the photographs taken by a testifying postal inspector were not.
3    The court found that the photographs "were not 'witnesses' against [the defendant]. They did not
4    'bear testimony' by declaring or affirming anything with a 'purpose.' Therefore, their admission
5    did not violate the Confrontation Clause." *Id.* at 1167. But the statements by the nontestifying post
6    office supervisor—who confirmed to the inspector the presence of someone matching the
7    defendant's description—were testimonial because they were made for the purpose of proving
8    events relevant to later criminal prosecution, and there was no ongoing emergency. *Id.* at 1168. In
9    determining whether an out-of-court statement is testimonial, the Ninth Circuit explained that
10   "courts must consider whether a statement was 'procured with a primary purpose of creating an out-
11   of-court substitute for trial testimony.'" *Id.* (quoting *Michigan v. Bryant*, U.S. 344, 358 (2011)).

12   Here, the Court is concerned specifically with the markings on the evidence bags, which
13   attribute certain drugs to certain defendants. The Court finds relevant that the markings on the bags
14   were not created in the context of an ongoing emergency; in labeling the bags, "law enforcement
15   was not seeking to determine . . . 'what is happening,' but rather 'what happened.'" *See id.* at 1169
16   (citations omitted). The Court also looks to whether the labeled bags will be offered at trial for their
17   truth (that they *are* the narcotics associated with each defendant) or for some other purpose; and
18   whether a reasonable person would have understood the primary purpose of the statement (i.e., the
19   markings) to be investigative. *See generally Brooks*, 772 F.3d at 1168-70 & n.1, 2 (citations
20   omitted). These factors all weigh in favor of a finding that Officer Hayes's labeling of the narcotics
21   constituted a testimonial statement and that her unavailability at trial could violate the Confrontation
22   Clause.

23   At the pretrial conference, the government represented that Officer Gomez—who will testify
24   at trial—was present during the collection and labeling of the drugs, and that the drug analyst who
25   conducted lab testing of the drugs will also testify. The government also stated that the body-worn
26   camera footage captures the officers: retrieving the narcotics from specific locations, stating which
27   defendants are associated with which narcotics, and placing the narcotics into plastic bags
28   attributable to those defendants.

12

Again, the Court finds more information is needed and that the government will need to make a preliminary showing at the evidentiary hearing on August 10 of what Officer Gomez will testify to regarding what she witnessed of the collection and labeling of the narcotics.

Accordingly, the Court **DEFERS** ruling on the government's Motion in Limine No. 1 until after the evidentiary hearing.

**Government's Motion No. 2 (that any examination of Officer Hayes be limited in scope):**

As discussed above, the government does not intend to call Officer Hayes in its case in chief. If the defense calls Officer Hayes as a witness, the government seeks an order "that testimony must be limited in scope to relevant evidence that is not unduly prejudicial." Pl.'s Mot. at 7. The government also seeks an order requiring the defense to proffer what it intends to elicit from Officer Hayes prior to calling her as a witness, arguing that she should not be called only to impeach her. The government emphasizes that the confidential informant who is implicated in the internal investigation is not involved in or related to this case.

Mr. Rodriguez Flores argues that this motion "is grossly premature" and asks that the Court defer ruling on this issue until it is ripe. Rodriguez Resp. at 9. In particular, the defense does not yet know if Officer Hayes will be made available to testify as a defense witness, and no *Brady/Giglio* material related to Officer Hayes's misconduct had been produced at the time of the filing of the briefs.[10]

The Court **DEFERS** ruling on the government's Motion in Limine No. 2 pending any further supplementation by Mr. Rodriguez Flores.

**Government's Motion No. 3 (that evidence of drug trafficking be admitted):**

The government seeks a pre-trial ruling that "relevant, inextricably intertwined, and 'other acts' evidence regarding evidence of drug trafficking by the defendants" be admitted. Pl.'s Mot. at 8. Specifically, the government wants to admit evidence of the officers' observations of the

---

[10] *Brady/Giglio* material was to have been produced on July 24, 2023, and the government states it complied with this deadline.

13

defendants dealing drugs in the Tenderloin, and of their accessing the residence and vehicles involved in the investigation. The government argues this is necessary to tell a cohesive story to the jury and also because the officers' observations of the defendants selling drugs are highly probative of their intent regarding the drugs that were seized. The government represents that SFPD officers observed both defendants dealing fentanyl in the Tenderloin the day before the execution of the search warrant. *Id.* at 10.

Both defendants oppose this motion. Mr. Nunez argues that admission of such evidence would be more prejudicial than probative and therefore should be excluded under Federal Rule of Evidence 403. He argues that the government has a wealth of evidence seized from the search that it can use to show intent: "Multiple pounds of suspected narcotics, thousands of dollars in U.S. currency, fentanyl pill pressing equipment, a gun, ammunition, and other indicia the Government commonly argues are probative of the intent to sell narcotics rather than to possess them for personal use." Nunez Resp. at 4. Mr. Nunez argues that the introduction of other acts evidence will be particularly prejudicial "where there has been a recent media blitz regarding 'open-air' fentanyl dealing by Honduran individuals." *See id.* (attaching numerous San Francisco Chronicle articles from July 2023).

Mr. Rodriguez Flores argues that he has not received a Rule 404(b) notice from the government, that any such notice is now too late, and that the government's motion in limine does not contain specifics of what might be admitted under Rule 404(b). Mr. Rodriguez Flores further states that there is no police report supporting the government's assertion that officers saw Mr. Rodriguez Flores dealing drugs in the Tenderloin the day before the execution of the search warrant. Officer Cunningham's Search Warrant Incident Report dated October 13, 2022, states that Mr. Rodriguez Flores "*was observed* selling narcotics in the City and County of San Francisco within the last two weeks" and that Officer Cunningham saw him walking into the Tenderloin District the day before, but the report does not say Officer Cunningham saw Mr. Rodriguez Flores sell drugs on that day (or in the weeks prior). *See* Falk Decl., Ex. A at US-00580 (emphasis added).

At the pretrial conference, the government clarified that the specific "other acts" evidence of drug trafficking that it seeks to introduce for Mr. Rodriguez Flores is contained in a "ping

14

1  warrant" by Officer Cunningham, dated October 5, 2022, at the bottom of the page Bates-stamped
2  192. The government produced hard copies of this document for the defense and for the Court at
3  the pretrial conference. The government stated that Officer Cunningham will testify only as to his
4  own observations of Mr. Rodriguez Flores conducting a drug deal on that day. Mr. Rodriguez Flores
5  stated his intent to seek discovery related to the individuals involved (including the confidential
6  informant Mr. Rodriguez Flores allegedly sold to) and that he may file an appropriate motion at a
7  later date.

8      The Court agrees with the government that the evidence of prior drug trafficking is relevant
9  to explain why officers went to the Oakland residence on October 13, 2022. The Court does not
10 find the April and May 2022 incidents of Mr. Nunez selling to undercover officers to be too remote
11 in time. The Court will limit Officer Cunningham's 404(b) testimony to Officer Cunningham's
12 personal observations only.

13     Accordingly, the Court **GRANTS** the government's Motion in Limine No. 3, without
14 prejudice to Mr. Rodriguez Flores filing a motion on the basis of new information.

15

16 **Government's Motion No. 4 (that evidence of the firearm be admitted):**

17     The government seeks an order "admitting relevant, inextricably intertwined, and 'other
18 acts' evidence regarding the presence of [the] ghost gun at the defendants' residence." Pl.'s Mot. at
19 10. The government argues that "[t]he nexus between the firearm and alleged drug trafficking is
20 clear" because of the location of the firearm (at the front of the house, stuffed into a trash bag
21 between the slats of the fence), the drug paraphernalia seized, and the dozens of rounds of
22 ammunition found at the residence. *Id.* The government intends to call an expert witness on drug
23 trafficking, DEA Special Agent David Mateer, to "testify about the presence of firearms as tools of
24 the trade for drug traffickers." *Id.* at 11. According to the government, this testimony—coupled
25 with "the presence of a firearm and ammunition associated with Nunez and the car he used to drive
26 to the Tenderloin"—will allow the jury to infer Mr. Nunez's intent to distribute drugs. *Id.*

27     Mr. Nunez did not file an opposition to this motion. Mr. Rodriguez Flores argues that
28 evidence of the firearm should be excluded from trial. If evidence of the firearm is admitted, he

reserves the right to request a severance and seeks a limiting instruction to preclude the jury from considering the firearm as evidence against Mr. Rodriguez Flores. He argues that there is "zero connection" between himself and the firearm: "He has been excluded as a DNA contributor to the firearm and no ammunition was located on his person, in his vehicle, or anywhere near where he was found in the residence." Rodriguez Resp. at 12-13.

The Court **GRANTS** the government's Motion in Limine No. 4; evidence of the firearm may be admitted as to Mr. Nunez, but the Court will issue a limiting instruction that the firearm is not to be considered as to Mr. Rodriguez Flores.

**Government's Motion No. 5 and Defense Motion No. 1 (that either side be barred from offering evidence not produced in discovery):**

Both sides argue that the opposing side should be barred from offering evidence not produced in discovery. As discussed at the pretrial conference, much of the difficulty here lies in the fact that this case was set for trial on very short notice.

Mr. Rodriguez Flores represented to the Court that he is not "sitting" on any discovery and that everything he has at this stage that should have been produced has been produced. He reserves the right to supplement his exhibit or witness list.

The government also represented that it has met its discovery obligations to date.

Mr. Rodriguez Flores, in his motion, states that the Court should exclude all expert testimony and FRE 404(b) "other acts" evidence for lack of notice.[11] Mr. Rodriguez Flores says that as of the day before the pretrial conference, he had not received any formal expert notice from the government. In the witness list it filed on July 20, 2023, the government listed, *inter alia*: David Mateer as "an expert in drug trafficking patterns and activities who will opine on drug trafficking activity and patterns present in this case[;]" Amy Lee, a Criminalist and expert in DNA analysis, who conducted the DNA testing on the firearm in this case; and Michelle Hensley, a Criminalist

---

[11] The Rule 404(b) notice was resolved at the pretrial conference, with the government clarifying precisely which "other acts" evidence it intends to introduce with respect to Mr. Rodriguez Flores. *See* Government's Motion in Limine No. 3, *supra*.

16

who will testify about the test results of the narcotics that were seized. Dkt. No. 92 at 2-3. The government stated in its papers that it "will provide complete expert disclosures in advance of the pre-trial conference." *Id.* at 2 n.1.

Mr. Rodriguez Flores has no objection to the DNA expert or the chemist who did the drug testing. His concern is with the DEA expert who will testify as to drug trafficking activity and patterns in this case. As discussed at the pretrial conference, there may be a way for the parties to resolve this issue among themselves. The parties are accordingly **ORDERED** to meet and confer regarding the use of the government's experts at trial and regarding any other discovery either side believes to be outstanding.

The Court **DENIES** the government's Motion in Limine No. 5 and the defense's Motion in Limine No. 1, without prejudice to either side renewing their motion prior to trial after a good faith effort to meet and confer.

**Government's Motion No. 6 (that all witnesses except the case agent and defendants be excluded from the courtroom):**

Pursuant to Federal Rule of Evidence 615, the government requests the Court order all witnesses excluded from the courtroom during trial, with the exception of case agent Gomez and the defendants. Mr. Nunez has filed no opposition. Mr. Rodriguez Flores has no objection except that he requests FPD investigator Michael Portman also be allowed to remain in the courtroom during testimony. Mr. Rodriguez Flores also requests the Court "designate all noticed government witnesses as further under defense subpoena, to the extent the government decides not to call certain individuals on its current Witness List." Rodriguez Resp. at 13-14.

The Court **GRANTS** the government's Motion in Limine No. 6. Officer Gomez and FPD Inspector Portman may remain in the courtroom during testimony. All noticed government witnesses shall be designated as under defense subpoena. The parties shall meet and confer in the coming week to ensure that all witnesses on the government's list have been subpoenaed and to fill in any gaps in subpoenas as necessary.

17

**Government's Motion No. 7 (that the defense be barred from referencing punishment or conviction consequences in front of the jury):**

The government requests an order that defense counsel be barred from referencing "the defendants' potential sentence or punishment, potential collateral consequences of conviction, or the fact that this case has been ongoing for an extended period during all phases of the trial[.]" Pl.'s Mot. at 13. Mr. Nunez has not objected, and Mr. Rodriguez Flores states that the defense fully intends to follow governing Ninth Circuit law.

The Court **GRANTS** the government's Motion in Limine No. 7.

## CONCLUSION

The Court DEFERS ruling on the government's Motions in Limine No. 1 and No. 2.

The Court GRANTS: the government's Motion in Limine No. 3; the government's Motion in Limine No. 4, with a limiting instruction as to Mr. Rodriguez Flores; and the government's Motions in Limine No. 6 and No.7.

The Court DENIES the government's Motion in Limine No. 5 and the defense's Motion in Limine No. 1, without prejudice.

The Court sets an evidentiary hearing for Thursday, August 10, 2023, at 1:00 p.m. in Courtroom 1. The government should be prepared to introduce "sufficient proof" to satisfy the Court that a reasonable juror could find that the narcotics the prosecution seeks to admit into evidence are in "substantially the same condition" as when they were seized. *See Solorio*, 669 F.3d at 954 n.13. The government should also be prepared to put forth sufficient evidence to satisfy the Court that other witnesses will be able to testify to the collection, labeling, and attribution of the narcotics (i.e., which narcotics are attributable to which defendant), such that Officer Hayes's absence from trial does not violate the Confrontation Clause.

**IT IS SO ORDERED**.

Dated: July 28, 2023

SUSAN ILLSTON
United States District Judge

18